# MEMBERSHIP UNIT PURCHASE AGREEMENT

This Membership Unit Purchase Agreement ("Agreement") is made the ____ day of May 2021, by and between **DAVID STANFILL**, (the "Seller") and **MICHAEL MARANDA LLC**, a New York limited liability company (the "Purchaser").

WHEREAS, Seller desires to sell and Purchaser desires to purchase 6,000 membership Units in the Squirrels Research Labs LLC (the "Company"), pursuant to the terms and conditions contained herein.

NOW, THEREFORE, in consideration of the promises and conditions contained herein, and other valuable consideration, the receipt and sufficiency of which is hereby acknowledged by the parties, the parties hereto agree as follows:

1. <u>Units to be Sold</u>.  The Seller shall sell to Purchaser 6,000 membership Units of ownership (the "Units") of the Company upon the terms and conditions set forth herein. The consideration for the transfer of the Units to Purchaser shall be $293,750.00, to be paid to Seller within sixty (60) days of the execution hereof, or as otherwise provided for herein.

2. <u>Unit Transfer</u>.  Effective on the execution date of this Agreement, the Units shall be transferred to Purchaser. The Company shall issue a Unit certificate representing the Units to be transferred hereunder.

3. <u>Representations of the Seller</u>. The Seller represents and warrants to Purchaser as follows:

    a. The Company is duly organized and a validly existing Company under the laws of the State of Ohio. The Company has all requisite power and authority to conduct its business as presently conducted and full power and authority to execute and deliver this Agreement and to perform its obligations hereunder.

    b. The Seller will have and will transfer and convey good and marketable title to the Units to Purchaser, free and clear of all liens and encumbrances.  The Seller will obtain waivers of any rights of first refusal or other rights to purchase the Units that are set forth in the Company's operating agreement, prior to the delivery of the purchase price to Seller

    c. Neither the execution and delivery of this Agreement to Purchaser nor the consummation of the transactions contemplated hereby will conflict with or result in a breach of any of the terms, conditions or provisions of any agreement or instrument to which the Company is a party or by which it is bound.

    d. The Company, as of the date of this Agreement, has no other liabilities of any nature, whether accrued, absolute, contingent, or otherwise, other than the debts of the Company that have accrued in the ordinary course of the business conducted by the Company, and the Seller does not know or have reasonable grounds to know of any basis for the assertion against the Company of any liability of any nature.

e. As of the date of this Agreement, the Company has not received any notice that is in violation of any applicable Federal, state and local laws regarding the business of the Company, including without limitation any tax reporting, licensure and laws regarding employment and employment practices, terms and conditions of employment, wages and hours.

f. Company has not received any notice that any of its suppliers or customers intend to terminate their business relationship with the Company, or materially decrease or limit their services, or purchase of products from the Company.

g. Other than has been disclosed to Purchaser, there is no action, suit, claim or legal, administrative, arbitration, condemnation or other proceeding or governmental investigation or examination or any change in any zoning or building ordinance affecting the Company or the Seller, pending or threatened, or injunction or orders entered, pending or threatened against the Company or Seller, or any business, properties or assets of the Company or Seller, at law or in equity, before or by any third party, federal, state, municipal or other governmental department, court, commission, board, bureau, agency or instrumentality, domestic or foreign, to restrain or prohibit the consummation of the transactions contemplated hereby or which, if determined adversely, is reasonably likely to result in a material adverse effect on the business of the Company.

h. To the Company's actual knowledge and belief, there are no material facts or circumstances that have not been disclosed by the Company which have or might reasonably be expected to have an adverse effect upon the transaction contemplated hereunder. All information which has been provided or which will be provided to the Recipient by the Company in connection with the transactions contemplated by this Agreement is, and will be true and correct as of the execution of this Agreement, in all material respects.

4. <u>Representations of Purchaser</u>. Purchaser represents and warrants to the Seller as follows:

a. Purchaser is a resident of the State of New York and is not authorized to conduct business in any other state.

b. Purchaser has not been furnished with any offering literature and has relied only on the information furnished or made available to Purchaser from the Company and the Seller in making the investment decision in connection with the purchase of the Units.

c. Purchaser is aware that no market may exist for the resale of the Units.

d. Purchaser is acquiring the Units for investment and not with a view to the further distribution of the Units.

e. Purchaser is aware of all restrictions imposed on the further distribution of the Units, including but not limited to buy-back rights, and rights of first refusal in favor of the Seller or its members, as may be set forth in the Company's Operating Agreement or other corporate documents, each as amended from time to time; and Purchaser hereby acknowledges the ability to review of copies of the foregoing, if desired, and agrees to be bound by their terms.

    f. Purchaser acknowledges that the Units have not been registered under the Securities Act of 1933 or "Blue Sky" or state securities laws, and they may not be resold or transferred by Purchaser without appropriate registration or the availability of an exemption from such requirements and without the issuance of a favorable opinion from counsel to the Company.

    g. Purchaser is aware that no federal or state agency has passed upon the Units, or made any finding or determination as to the fairness of investment in the Units or any recommendation or endorsement of the Units.

    h. Purchaser is not acquiring the Units in reliance or pursuant to any other offering literature or representation of any party, whether oral or written, or as a result of any advertisement, article, notice or other communication published or broadcast in any newspaper, magazine, radio or television broadcasts, or any similar medium.

    i. Purchaser has adequate means of providing for Purchaser's current needs, is able to bear the economic risks of investment for an indefinite period of time, and can afford a complete loss of this investment.

    j. Purchaser has knowledge and experience in financial and business matters, has investigated the Company and is capable of evaluating the merits and risks of investment in the Company.

    k. Purchaser, to the extent Purchaser deems advisable, has consulted with Purchaser's professional tax, legal, and financial advisors with respect to the Units and the investment therein and the federal, state, and/or local income tax consequences of Purchaser's participation as a member of the Company; no representations or warranties have been made to Purchaser other than those contained in the Agreement, and Purchaser has not relied upon any representation or warranty not contained in the Agreement, in acquiring the Units. With respect to the tax and other legal aspects of this investment, Purchaser is relying solely upon the advice of Purchaser's own advisors.

    l. Purchaser has not distributed the Agreement to any person other than Purchaser's professional tax, legal or financial advisors, if any, and no person other than Purchaser and Purchaser's advisors, if any, has used the Agreement.

    m. PURCHASER'S SUBSCRIPTION FOR UNITS IS CONDITIONED UPON SIGNATURE OF THIS AGREEMENT AND THE OPERATING AGREEMENT ACCORDING TO THE TERMS SET FORTH THEREIN. UNTIL THESE CONDITIONS ARE SATISFIED, PURCHASER IS NOT A SECURITYHOLDER OF THE SELLER AND HAS NO RIGHTS AS SUCH.

   5. <u>Additional Representations of Purchaser</u>. Purchaser covenants and agrees as follows:

    a. Purchaser shall execute the Operating Agreement of the Company immediately after the closing of this transaction.

    b.  Purchaser agrees that the assignment and transferability of the Units acquired pursuant hereto shall be made only in accordance with the Operating Agreement, as amended from time to time.

    6.  <u>Restrictive Legends</u>. Purchaser understands and agrees that the certificates comprising the Units may bear a legend that until (a) such securities will have been registered under the Securities Act of 1933 and effectively been disposed of in accordance with an effective registration statement; or (b) in the opinion of counsel for the Company such securities may be sold without registration under the Securities Act of 1933, as well as any applicable "Blue Sky" or state securities laws.

    7.  <u>Survival.</u> All representations, warranties, indemnities, and covenants of the Seller and the Purchaser shall survive indefinitely termination or acceptance of this Agreement and payment for the Units by the Purchaser.

    8.  <u>Confidential Information</u>. In connection with the negotiation of this Agreement and the preparation for the consummation of the transactions contemplated hereby, Recipient will have access to confidential information relating to the Company. Recipient shall treat such information as confidential, preserve the confidentiality thereof, and not duplicate or use such information, except in connection with the transactions contemplated hereby and, in the event of the termination of this Agreement for any reason whatsoever, Recipient shall return to the Company all documents, work papers, and other materials (including all copies thereof) obtained in connection with the transactions contemplated hereby and will use all reasonable efforts, including instructing its employees who have had access to such information, to keep confidential and not to use any such information, unless such information is now or is hereafter disclosed, through no act or omission of such party, in any manner making it available to the general public. Recipient acknowledges that its breach, or any threatened breach, on Recipient's part of this Section shall result in irreparable and incalculable damages to the Company. Therefore, in addition to any action by the Company for collection of damages resulting from the breach of this Section, the Company also will be entitled to immediate injunctive relief, restraining the Recipient from continued or threatened breach of this Section. Recipient hereby agrees that the covenants contained in this Section will survive the closing and continue to be binding upon the Recipient thereafter.

    9.  <u>Taxes</u>. Each party hereby agrees to be responsible for the payment of any taxes incurred by such party as a result of the transactions contemplated herein.

    10.  <u>Expenses</u>. Each party shall be responsible for and bear all of its own costs and expenses, including, without limitation, expenses of legal counsel, accountants, and other advisors in connection with the preparation and consummation of this Agreement and in the transactions contemplated herein by both parties.

    11.  <u>Notices</u>. All notices, demands or other communications given under this Agreement shall be in writing and shall be either hand delivered or mailed certified, postage prepaid, to the parties at their respective addresses.

    12.  <u>Assignment</u>. This Agreement shall not be assignable by either party without the

prior written consent of the other party hereto.

13. <u>Binding Effect</u>.  This Agreement shall bind the parties hereto, their legal representatives, heirs, successors, and assigns.

14. <u>Entire Agreement</u>.  Each party acknowledges that this Agreement and the Operating Agreement, as amended from time to time, constitute the complete and exclusive statement of the Agreement between the parties relating to the ownership of the Units, which supersede and merge all prior proposals, understandings, and all other agreements, oral and written, between the parties relating to the ownership of the Units. In deciding to execute this Agreement, Recipient is not relying upon any promises, representations, or statements not expressly set forth in this Agreement.

15. <u>Modification</u>.  No party may modify, alter, or otherwise change this Agreement except by written instrument executed by each of the parties.

16. <u>Applicable Law and Exclusive Venue</u>.  This Agreement shall be governed by and construed in accordance with the laws of the State of Ohio with exclusive venue for any matters related to this Agreement to be in the courts having jurisdiction over North Canton, Ohio.

17. <u>Waiver</u>.  No supplement, modification, or waiver of this Agreement shall be binding unless executed in writing by the parties to be bound thereby.  No waiver of any of the provisions of this Agreement shall be deemed or shall constitute a waiver of any other provision hereof, nor shall such waiver constitute a continuing waiver unless otherwise expressly provided.

18. <u>Severability</u>.  In the event any provision of this Agreement is invalid or unenforceable under any applicable laws, orders and/or regulations, this Agreement shall be considered divisible as to such provision, which shall be considered imperative, but the remainder of this Agreement shall be valid and binding as though such provision were not included therein, and the parties shall engage in bona fide negotiations to amend this Agreement to comply with the requirements of applicable laws, orders and/or regulations.

19. <u>Multiple Counterparts</u>.  This Agreement may be executed in one or more counterparts, in original, facsimile, or electronic signatures, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument.

20. <u>Section Headings</u>.  The headings of the Sections herein are inserted for convenience and reference only and are not intended to be a part of or to affect the meaning of interpretation of this Agreement.

21. <u>Representation</u>.  Recipient has had an opportunity to engage his own legal counsel with respect to all matters related hereto, including the review of this Agreement and the Operating Agreement.

IN WITNESS WHEREOF, the parties hereto have executed this Agreement as of the day and year first written above.

**DAVID STANFILL**

_____

**PURCHASER
MICHAEL MARANDA LLC**

_____
By: Michael Maranda, Member-Manager